Eric H. Spencer (#022707)
Ryan J. Regula (#028037)
Heather Dukes (#030161)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
Telephone: 602.382.6000
espencer@swlaw.com
rregula@swlaw.com
hdukes@swlaw.com
*Attorneys for Arizona Recovery Housing Association*

Steven G. Polin (*pro hac vice* application to be filed)
The Law Office of Steven G. Polin
3034 Tennyson Street, NW
Washington, DC 20015
Telephone: 202.331.5848
spolin2@earthlink.net
*Attorneys for Arizona Recovery Housing Association*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Arizona Recovery Housing Association, an Arizona not-for-profit corporation, | No. |
| Plaintiff, | **Complaint** |
| v. | |
| Arizona Department of Health Services, an agency of the State of Arizona; Dr. Cara Christ, M.D., in her official capacity as Director of the Arizona Department of Health Services, | |
| Defendants. | |

For its Complaint against defendants Arizona Department of Health Services and Dr. Cara Christ, M.D., plaintiff Arizona Recovery Housing Association alleges as follows:

**<u>Introduction</u>**

1. This is an action for declaratory, monetary, and injunctive relief principally seeking to enjoin the State of Arizona from implementing and enforcing A.R.S. §§ 36-2061,

*et seq.* (the "Sober Living Homes statute") and A.A.C. R9-12-101 *et seq.* (the "Sober Living Homes rules"), which both facially and as-applied discriminate against housing providers for recovering alcoholics and substance abusers through the imposition of harsher and more burdensome licensing requirements than those levied against similar housing programs for other disabled persons. In this way, the Sober Living Homes statute and rules violate the Federal Fair Housing Act in 42 U.S.C. §§ 3601 *et seq.*, the Americans with Disabilities Act in 42 U.S.C. §§ 12101 *et seq.*, and the Federal Rehabilitation Act in 29 U.S.C. § 794. Accordingly, the Arizona Department of Health Services must be enjoined from enforcing such discriminatory statutes and rules.

**Parties, Jurisdiction, and Venue**

2. The Arizona Recovery Housing Association ("AzRHA") is an Arizona non-profit corporation with its principal place of business in Phoenix, Arizona.

3. The Arizona Department of Health Services ("DHS") is a state government agency charged to promote, protect, and improve the health and wellness of all individuals and all communities in Arizona. This includes the implementation and enforcement of the Sober Living Homes statute and rules, for which DHS is provided federal funding.

4. Dr. Cara M. Christ, M.D. ("Director Christ") is the Director of DHS, whose responsibility is to lead and oversee the operations of DHS. Director Christ is sued in her official capacity.

5. This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, 42 U.S.C. §§ 3613 and 12133, and 29 U.S.C. § 794.

6. Venue is proper in this Court because all acts complained of occurred in this district.

**Sober Living Homes**

7. AzRHA is an affiliate of the National Alliance of Recovery Residences ("NARR"), which is an organization that sets national standards for sober living homes. As a NARR affiliate, AzRHA trains and educates its members, conducts advocacy campaigns to ensure fair housing for members of the substance abuse recovery community, and

1  inspects and certifies that member sober living homes meet the NARR national standard for
2  health and safety.

3       8.     DHS has also provided AzRHA the delegated authority to inspect and certify
4  sober living homes on behalf of DHS. As such, DHS bears no administrative or financial
5  burden to inspect and certify AzRHA sober living homes.

6       9.     Each AzRHA sober living home is required to pay annual membership and
7  inspection fees to AzRHA. The initial AzRHA membership fee is roughly $275.00 and the
8  subsequent annual membership and inspection fees are roughly $125.00.

9       10.     AzRHA has certified 177 sober living home members in Arizona as meeting
10 the NARR national standard for health and safety.

11      11.     AzRHA sober living homes are family units that blend seamlessly into the
12 neighborhood and community. They are not associated with blight, community dangers, or
13 any unseemly activity. AzRHA sober living homes abide by prescribed rules, operate peer-
14 run support groups, and conduct routine drug testing.

15      12.     AzRHA sober living homes do not offer substance abuse treatment,
16 counseling, or therapy. Thus, they are nothing more than a group of individuals that
17 voluntarily choose to live together as a unit, under the supervision of a house manager, in
18 order to maintain a sober lifestyle.

### AzRHA's Standing

20      13.     Congress intended to confer standing under the Federal Fair Housing Act to
21 the full limits of Article III. *See Fair Housing of Marin v. Combs*, 285 F.3d 899, 902 (9th
22 Cir. 2002) (citing *Havens Realty Corp. v. Coleman*, 455 U.S 363 (1982)); *see also* 42 U.S.C.
23 § 3613 (permitting suit by anyone "aggrieved" by housing discrimination against the
24 disabled); 42 U.S.C. § 12133 (extending a cause of action to "any person alleging
25 discrimination on the basis of disability."); *see also Village of Arlington Heights v.*
26 *Metropolitan Housing Development Corp.*, 429 U.S. 252, 262-63 (1977).

27      14.     AzRHA has direct organizational standing to bring this action against DHS
28 and Director Christ.

15. First, AzRHA diverted resources from educating and training its members and publicly advocating for fair housing for its members by repeatedly opposing DHS on AzRHA's members behalf concerning the discriminatory nature of the Sober Living Homes statute and rules.

16. Second, AzRHA diverted more resources from its education, training, and public advocacy programs when it was forced to file this action because DHS and Director Christ refused to cease and desist their discriminatory and harassing practices.

17. Third, DHS and Director Christ's decision to enforce the Sober Living Homes statute and rules, both of which are discriminatory in a facial and as-applied nature, frustrate the purpose of AzRHA's mission. Specifically, the licensing requirements embedded and promoted by the Sober Living Homes statute and rules forced several AzRHA sober living homes to close and more still face excessive fines, which could result in still additional closures. Closure of AzRHA sober living homes means individuals that need a supportive living community to overcome addiction will be left underserved or even unserved, the effect of which is to deny housing to a protected class of persons.

18. AzRHA also has representational standing to bring this action on behalf of its members.

19. As mentioned above, AzRHA has certified 177 sober living homes in Arizona as being AzRHA members that have satisfied the NARR national standards for health and safety.

20. Numerous AzRHA sober living homes have suffered adversely under the Sober Living Homes statutes and rules and DHS and Director Christ's application of the same. At least seven AzRHA sober living homes were forced to close to date, and therefore, AzRHA's mission of helping individuals that need a supportive living community to overcome addiction has been thwarted. Those seven AzRHA sober living homes are:

  a. Mesa Rose House for Women—14 beds
  b. Phoenix Freedom for Life Home for Women—10 beds
  c. Phoenix Camelback Recovery-App House for Men—7 beds

1      d.    Cottonwood Steps to Recovery-Gratitude House for Women—9 beds

2      e.    Phoenix Vivre-Maryland Property for Men—24 beds

3      f.    Sanctuary I – 7th Place House for Men — 7 beds

4      g.    Sanctuary II – Becker House for Men – 9 beds

21. None of the seven AzRHA sober living homes' participation is this cause of action is required because AzRHA is challenging the facial and as-applied discriminatory nature of the Sober Living Homes statute and rules.

### Discriminatory Animus and the Sober Living Homes Statute

22. The Sober Living Homes statute in A.R.S. §§ 36-2061 *et seq.* was passed by the Arizona Legislature in 2018 via S.B. 1465 and became effective on August 3, 2018. However, the genesis for this legislation began years earlier.

23. The statute was designed not to benefit the providers of housing for recovering alcoholics and substance abusers, or the recovering persons themselves, but rather was enacted with discriminatory intent to protect uncomfortable neighbors from the presence of recovering persons.

24. The narrative of stereotyping and discriminating against these persons, who are disabled by virtue of their alcohol or chemical dependency and choose to participate in sober living homes provided by AzRHA members, began as early as 2015.

25. State Representative Noel W. Campbell, an initial sponsor of predecessor legislation, called the sober living homes "halfway houses for people" who were former prison inmates based on his experience in Prescott.

26. In January 2015 and March 2016, on why legislation was allegedly needed for such homes, Representative Campbell stated: "These drug users are considered a protected class under federal law . . . Young men in the neighboring group home hang out smoking in the alley and create fire danger . . . Trash cans at the group home are overloaded so ravens pull out the trash and leave it scattered about . . . These are drug abusers . . . [and] a clash of cultures with the residents."

27. By 2017, similar animus had spread to parts of the Phoenix metropolitan area. For example, a flyer posted by "Take Action Phoenix" ("TAP") near 3440 E. Shangri La Road on June 12, 2017, warned residents that "Advanced Sober Living purchased the home in our neighborhood . . . to be used as a Halfway House for recovering drug/alcohol addicts" and attempted to rally "each neighbor that is opposed to having a drug and alcohol recovery business in the middle of our neighborhood."

28. TAP's current website, www.takeactionphoenix.com, mischaracterizes sober living homes as filled with residents "[l]oitering, trespassing, or congregating in unauthorized areas," creating "[n]oise that is disrupting," and generating "[p]roperty maintenance issues, including trash, garbage, weeds or lack of yard maintenance." The website implores residents to "[c]ontact the City of Phoenix to tell them about a home you think may be a group home or sober living home" based on the home's mere existence.

29. In 2018, Representative Campbell stated there needed to be a unique "good neighbor" policy applicable to sober living homes to address the concerns and complaints of nearby neighboring residents.

30. These are the stereotypes that led to the Arizona Sober Living Home statute.

31. Ostensibly the Sober Living Homes statute seeks to license and regulate sober living homes "to ensure the public health, safety, and welfare" of Arizona citizens.

32. But, the Sober Living Homes statute imposes unduly burdensome licensing requirements on sober living homes and their residents in violation of the Fair Housing Act, the Americans with Disabilities Act, and the Rehabilitation Act.

33. Sober living homes were singled out and required by statute to adopt "good neighbor" policies that ostensibly protect the surrounding neighborhood from recovering alcoholics and substance abusers. For example, under A.R.S. § 36-2062(A), they were required to (1) have policies and procedures that promote the safety of the surrounding neighborhood and community at large, (2) have policies and procedures for discharge of persons living in the residence so the surrounding community was not negatively impacted, and (3) have policies and procedures for managing complaints about sober living homes.

1   Under state law, no other similarly-situated disability group licensed by DHS is required to
2   adopt such "good neighbor" policies.

3       34.    When the "good neighbor" policies are viewed in light of legislative and
4   community comments, it becomes clear that the policies were enacted not to benefit a
5   protected disabled group of people, but to punish them.

6       35.    AzRHA held out hope the impact would be minimal on AzRHA sober living
7   homes because AzRHA was permitted to inspect and certify its own members without the
8   involvement of DHS. And without any need to inspect AzRHA sober living homes, DHS
9   would have no justification to impose licensing fees to pay for inspections at AzRHA
10  homes.

**The Sober Living Homes Rules**

12      36.    DHS has the authority to establish a fee structure for licensure, license
13  renewal, and late payments under A.R.S. § 36-2064(A).

14      37.    Unfortunately, DHS commenced the rule-making process with the same type
15  of discriminatory animus that undergirded the original statute. DHS's Economic Impact
16  Statement ("EIS") submitted to the Governor's Regulatory Review Council ("GRRC")
17  confirms as much. DHS's EIS stated: "The Department believes that requirements in the
18  new rules, as well as the Department's oversight of sober living homes as part of the
19  licensing process, may decrease instances in which the existence of a sober living home in
20  a neighborhood has a negative impact on the residents of the neighborhood, including
21  homeowners. Therefore, the new rules may provide a significant benefit to a homeowner or
22  other resident of a neighborhood in which a sober living home is located." However, none
23  of the rules were for the health, welfare, or benefit of residents in sober living homes.

24      38.    The Sober Living Homes rules promulgated by DHS in A.A.C. R9-12-101 *et*
25  *seq.* became effective on July 1, 2019, over AzRHA's objections.

26      39.    Each sober living home is required by rule to pay an annual license fee of
27  $500.00, plus $100.00 times the maximum number of beds. *See* A.A.C. R9-12-103(A)(6);
28  A.A.C. R9-12-104(A)(3). This fee structure is the highest for any facility licensed by DHS.

In fact, the fees are almost double those required for assisted living homes, assisted living centers, nursing care institutions, and intermediate care facilities for individuals with intellectual disabilities.

40. Under A.A.C. R9-10-106(C)(1)(b), for example, an adult day health care facility, assisted living home, or assisted living center that has a capacity of one to fifty-nine beds must only pay an annual license fee of $280.00, plus the licensed capacity times $70.00.

41. Under A.A.C. R9-10-106(C)(2)(b), a behavioral health facility that has a capacity of one to fifty-nine beds must only pay an annual license fee of $375.00, plus the licensed capacity times $94.00.

42. Under A.A.C. R9-10-106(C)(4), a nursing care institution or an intermediate care facility for individuals with intellectual disabilities that has a capacity of one to fifty-nine beds must only pay an annual license fee of $290.00, plus the license capacity times $73.00.

43. Under A.A.C. R9-10-106(C)(5), a hospital, home health agency, hospice inpatient facility, abortion clinic, recovery center, outpatient surgical center, pain management clinic, or unclassified health care institution that has a capacity of one to fifty-nine beds must only pay an annual license fee of $365.00, plus the licensed capacity times $91.00.

44. All these facilities have lower fee requirements than sober living homes.

45. All these facilities can offset their minimal fees by patient insurance payments.

46. AzRHA sober living homes are not insurance eligible. Therefore, they must bear the brunt of any state licensing fees. Moreover, many sober living homes are unable to pass on the cost of licensing fees to their residents due to economic fragility.

47. Unlike an assisted living facility, or a behavioral health facility, or a nursing care institution, sober living homes do not provide any health care services, medical

services, and psychological services; nor do they have licensed professional health care workers that provide professional monitoring and supervising for the residents.

48. Irrespective of the fee structure's burdensomeness, AzRHA sober living homes should have never been subjected to DHS licensing fees in the first place. The licensing fees were intended to offset the costs of inspection and certification, neither of which apply to AzRHA member homes.

49. Senator Kate Brophy McGee sent DHS a letter on December 11, 2018 clarifying it was "my intent not to over-regulate good actors in the industry" and to "use the National Association of Recovery and Residences (NARR) and/its state affiliate the Arizona Recovery Housing Association (AZRHA) . . . as resources for developing ADHS' standards."  She noted the requirement of not "putting good homes out of business" and "avoiding unnecessary and overly burdensome regulations." But DHS ignored the Senator's plea and subjected AzRHA homes to the exact burdensome licensing fees that Senator Brophy McGee wanted avoided.

**DHS' Aggressive Enforcement and Refusal to Grant Reasonable Accommodations**

50. DHS has remained indifferent to AzRHA's concerns and, in fact, has begun to aggressively issue threatening cease and desist letters to AzRHA sober living homes.

51. On or about September 30, 2019, various AzRHA members submitted their licensing applications to DHS with a reasonable accommodation request for a waiver of the per home and per bed fee. The AzRHA members cited adverse economic impact caused by the fee.

52. DHS is required by federal law to make such reasonable accommodations.

53. However, rather than respond to the AzRHA members' requests, DHS sent each AzRHA member a notice of deficiency stating the application was incomplete because the required fee was not included.

54. On December 16, 2019, AzRHA sent DHS a letter concerning DHS' failure to respond to its members' reasonable accommodation requests. The December 16, 2019 letter advised DHS that a failure to respond to a reasonable accommodation request was the

- 9 -

same as denying it. The letter also requested an extension of the deadline to submit a completed application.

55. On December 23, 2019, DHS sent letters to all the AzRHA members that requested a reasonable accommodation and a waiver of the licensing fees. In that letter, DHS stated that providing such accommodation "would, at the very least, impose a substantial, undue financial burden on the Department" and "[l]icensing fees are instrumental to enable the Department to meet its statutory mandate of administering the licensure and regulation of the program." DHS stated further that a waiver of fees would result in an undue burden on DHS and would limit, if not eliminate, the department's ability to meet its statutory obligations. DHS then denied AzRHA's request for a deadline extension for its members and concluded by stating the applications must be complete by February 1, 2020.

56. On February 27, 2020, AzRHA wrote again to DHS on behalf of its members asking for a reconsideration of the reasonable accommodation waiver denial. AzRHA also requested an explanation as to why DHS created such a disparity in licensure fees for sober living homes compared to assisted living facilities, adult day care facilities, and other housing facilities for persons with disabilities. For example, the smallest assisted living facility only had a licensing fee of $280.00 plus the licensed capacity times $70.00 and the smallest behavioral health facility had a licensing fee of $375.00 plus the licensed capacity times $94.00, whereas sober living homes had a licensing fee of $500.00 plus $100.00 times the maximum number of residents.

57. DHS never responded to AzRHA's February 27, 2020 letter, resulting in a constructive final denial.

58. On or about March 9, 2020, as to AzRHA sober living homes that managed to stay open in light of the fees, DHS threatened the homes pay fees by March 18, 2020 or face fines of $1,000.00 per day with a retroactive date to October 2019.

59. On or about March 18, 2020, AzRHA again sent DHS a letter asking for a waiver due to economic hardship. But once more, DHS ignored (and therefore denied) the request.

60. In March 2018, AzRHA filed a housing discrimination complaint with the U.S. Department of Housing and Urban Development ("HUD Complaint") against DHS on behalf of it and its members.

61. The HUD Complaint alleged that the Sober Living Homes statute and its enforcement discriminated against a protected class of persons. In addition, the HUD Complaint alleged that the licensing fee was discriminatory and that DHS refused to waive or modify the fees imposed as a reasonable accommodation.

62. The HUD Complaint was served on the State of Arizona's Office of the Attorney General on or about March 23, 2020.

63. AzRHA's HUD Complaint based on DHS' discriminatory housing practices constitutes a protected activity pursuant to 42 U.S.C. § 3617.

64. Since AzRHA filed the HUD Complaint, DHS has intimidated and threatened AzRHA members with $1,000.00 daily fines if the full licensing fee was not paid.

65. On or about April 30, 2020, Carla Vista Sober Living, LLC, an AzRHA member, was served with an administrative complaint by DHS. In that administrative complaint, DHS sought $77,000.00 in fines.

## COUNT ONE
**Violation of the Federal Fair Housing Act and Accompanying Regulations**

66. The allegations in the foregoing paragraphs are incorporated by this reference.

67. Congress amended the Fair Housing Act (42 U.S.C. § 3601 *et seq.*) in 1988 to extend the guarantee of fair housing to handicapped individuals.

68. Under the Fair Housing Act, "handicap" means a person with a "physical or mental impairment which substantially limits one or more of such person's major life activities." The term "physical or mental impairment" includes "alcoholism" and "drug

1 addiction (other than addiction caused by current, illegal use of a controlled substance)."
2 *See* 24 C.F.R. § 100.201.

3     69.    Under the Fair Housing Act, it is unlawful to discriminate, make unavailable, or deny a dwelling to any buyer or renter because of a handicap of that buyer or renter, a person residing in or intending to reside in that dwelling, or any person associated with that buyer or renter. 42 U.S.C. § 3604(f)(1).

    70.    Under the Fair Housing Act, it is unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of— (A) that buyer or renter, (B) a person residing in or intending to reside in that dwelling after it so sold, rented, or [was] made available; or (C) any person associated with that buyer or renter." 42 U.S.C. § 3604(f)(2).

    71.    Under the Fair Housing Act, discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a handicapped] person equal opportunity to use and enjoy a dwelling." 42 U.S.C. § 3604(f)(3)(B).

    72.    Under the Fair Housing Act, it is unlawful to make, print, publish, or cause "to be made, printed, or published a statement in connection with the sale or rental of housing that indicates a limitation, preference, or discrimination on the basis of disability." 42 U.S.C. § 3604(C).

    73.    Under the Fair Housing Act, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed, or on account of his having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by section 3603, 3604, 3605, or 3606" of Title 42. 42 U.S.C. § 3617.

    74.    Furthermore, the Fair Housing Act shall not "be construed to invalidate or limit any law of a State or political subdivision of a State, or of any other jurisdiction in which this title shall be effective, that grants, guarantees, or protects the same rights as are

1  granted by this title." 42 U.S.C. § 3615. Moreover, any "law of a State, a political
2  subdivision, or other such jurisdiction that purports to require or permit any action that
3  would be a discriminatory housing practice under this title shall to that extent be invalid."
4  *Id.*

5        75.    The Sober Living Homes statute and rules violate the Fair Housing Act by
6  discriminating against residents of AzRHA member homes by compelling "good neighbor"
7  policies when no other similarly situated disabled group has to do likewise and by requiring
8  sober living homes pay onerous licensing fees.

9        76.    DHS and Director Christ violated the Fair Housing Act by refusing to
10 consider and then denying AzRHA members' requests for reasonable accommodation.

11       77.    The Sober Living Homes statute and rules violate the Fair Housing Act by
12 having discrimination as the basis of their intent, as demonstrated by statements by
13 Representative Campbell, community organizations that advocated for the legislation, and
14 DHS and Director Christ via their EIS.

15       78.    DHS and Director Christ's EIS violated the Fair Housing Act by printing or
16 publishing a statement of discrimination.

17       79.    DHS and Director Christ violated the Fair Housing Act by intimidating and
18 threatening AzRHA members' use of the sober living home through retaliatory tactics and
19 fines.

20       80.    Because the Sober Living Homes statute and rules are facially discriminatory
21 and/or because DHS and Director Christ failed to provide a reasonable accommodation
22 under the statute and rules, AzRHA is entitled to (1) declaratory relief that the statute and
23 rules violate the Fair Housing Act and (2) injunctive relief that enjoins DHS and Director
24 Christ from enforcing the licensing and inspection fees against AzRHA members.

25       81.    Because the Sober Living Homes statute and rules are also discriminatory as
26 -applied to AzRHA members, who do not require any inspection by DHS and Director
27 Christ because they self-certify according to NARR and AzRHA standards, AzRHA
28 likewise is entitled to (1) declaratory relief that the statute and rules violate the Fair Housing

Act and (2) injunctive relief that enjoins DHS and Director Christ from enforcing the licensing and inspection fees against AzRHA members.

## COUNT TWO
### Violation of the Americans with Disabilities Act and Accompanying Regulations

82. The allegations in the foregoing paragraphs are incorporated by this reference.

83. Under the Americans with Disabilities Act ("ADA") in 42 U.S.C. § 12132, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

84. Under 42 U.S.C. § 12131(1), a "public entity" is any State, local government, department, or agency like DHS.

85. Under 28 C.F.R. § 35.130(a)(6), a "public entity" is prohibited from administering "a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability."

86. Under 28 C.F.R. § 35.130(a)(6), a "public entity" is prohibited from establishing "requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability."

87. Under 28 C.F.R. § 35.130(a)(4)(i), a "public entity" is prohibited from determining site or facility locations "[t]hat have the effect of excluding individuals with disabilities," deny persons with disabilities the benefits of those locations, or otherwise subject them to discrimination of any kind.

88. The Sober Living Homes statute and rules violate the ADA and 28 C.F.R. § 35.130(a)(6) by administering "a licensing or certification program in a manner that subjects qualified individuals with disabilities to discrimination on the basis of disability." The Sober Living Homes statute and rules did this by requiring sober living homes to comply with "good neighbor" policies when no other similarly situated disabled group home had to do

likewise, and by requiring sober living homes to comply with onerous licensing fees that were almost double that of any other similarly situated disabled group home.

89. The Sober Living Homes statute and rules further violated the ADA and 28 C.F.R. § 35.130(a)(6) by establishing "requirements for the programs or activities of licensees or certified entities that subject qualified individuals with disabilities to discrimination on the basis of disability."

90. The Sober Living Homes statute and rules further violated the ADA and C.F.R. § 35.130(a)(4)(i) by determining site or facility locations "[t]hat have the effect of excluding individuals with disabilities," denying persons with disabilities the benefits of those locations, or otherwise subjecting them to discrimination of any kind.

91. Because the Sober Living Homes statute and rules are discriminatory, both on a facial and on an as-applied basis, AzRHA is entitled to (1) declaratory relief that the statute and rules violate the ADA, (2) injunctive relief that enjoins DHS and Director Christ from continuing to harm AzRHA members, and (3) monetary damages.

## COUNT THREE
### Violation of the Federal Rehabilitation Act

92. The allegations in the foregoing paragraphs are incorporated by this reference.

93. Under the Federal Rehabilitation Act in 29 U.S.C. § 794, no qualified individual with a disability shall be excluded from participating in, denied the benefits of, or be subject to discrimination under any program receiving federal financial assistance on the basis of disability.

94. DHS and Director Christ receive federal funding to administer the Sober Living Homes statutory program.

95. Accordingly, when the Sober Living Homes statute and rules required sober living homes to comply with "good neighbor" policies when no other similarly-situated disabled group home had to do likewise, and comply with onerous licensing fees that were almost double that of any other similarly situated disabled group home, AzRHA members were discriminated against by a program that receives federal funding.

96. Because the Sober Living Homes statute and rules are discriminatory, both on a facial and an as-applied basis, AzRHA is entitled to (1) declaratory relief that the statute and rules violate the Federal Rehabilitation Act, (2) injunctive relief that enjoins DHS and Director Christ from continuing to harm AzRHA members, and (3) monetary damages.

## DEMAND FOR JURY TRIAL

Pursuant to 38(b) of the Federal Rules of Civil Procedure, AzRHA requests a trial by jury.

## PRAYER FOR RELIEF

**WHEREFORE**, AzRHA requests that judgment be entered in its favor and against DHS and Director Christ as follows:

a. For a declaratory judgment that the Sober Living Homes statute in A.R.S. § 36-2061 *et seq.* and its rules in A.A.C. R9-12-101 *et seq.* are discriminatory on their face and as-applied to AzRHA sober living homes;

b. For a temporary restraining order, preliminary injunction, and permanent injunction prohibiting DHS and Director Christ from enforcing the Sober Living Homes statute and accompanying rules;

c. For an award of damages to compensate AzRHA and its member sober living homes;

d. For an award of reasonable attorneys' fees and costs; and

e. For all other relief that the Court deems just and proper.

Dated this 7th day of May 2020.

SNELL & WILMER L.L.P.

By: s/ Ryan J. Regula
Eric H. Spencer
Ryan J. Regula
Heather Dukes
One Arizona Center
400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
*Attorneys for Arizona Recovery Housing Association*

THE LAW OFFICE OF STEVEN G. POLIN

By: s/ Steven G. Polin (with permission)
    Steven G. Polin
    3034 Tennyson Street, NW
    Washington, DC 20015
    *Attorneys for Arizona Recovery Housing Association*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 7th day of May, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF Registrants.

                                                s/ Tracy Hobbs